### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| CASSIE DISCH, | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | 3:23-cv-2409 |
| | § | |
| GRUBBS AUTOMOTIVE GRA, LLC d/b/a | § | |
| GRUBBS ACURA | § | |
| GEORGE R. GRUBBS, III | § | |
| JACOB TAYLOR | § | |
| AL LEWIS | § | |
| TYRONE ROBINSON | § | |
| CHRIS STILES | § | |
| *Defendants.* | § | |

### PLAINTIFF'S COMPLAINT
### AND JURY DEMAND

#### INTRODUCTION

Grubbs Acura is a dishonest car dealership. Since the dealership's opening day, the Defendants have used it to deploy a fraudulent "Destination Double Dip" scheme against almost every one of the dealership's new car customers. Plaintiff Cassie Disch was such a customer and is a victim of the scheme, which violates federal anti-racketeering law, Texas consumer protection law, and common law prohibiting fraud. Mrs. Disch brings this lawsuit to hold the Defendants accountable for breaking those laws.

## TABLE OF CONTENTS

Introduction..................................................................................................................1

Table of Contents .......................................................................................................... 2

Parties...........................................................................................................................3

Jurisdiction & Venue .................................................................................................3–4

Facts .......................................................................................................................4–14

    **The Destination Double Dip Scheme**............................................................ 5–11

    **The Bait-and-Switch Scheme**......................................................................11–14

    **Count 1: Racketeer Influenced and Corrupt Organizations (RICO) Conspiracy**
        **18 U.S.C. § 1962(d)** ............................................................................ 15–27

**Overt & Predicate Acts**

    A. October 2021: TxDMV warning—but the conspirators continue the
        Double Dip Scheme .................................................................................15–16

    B. August 2022: Plaintiff Cassie Disch is victimized by the Destination Double
        Dip Scheme.............................................................................................. 16–21

    C. September 2022: Customer No. 2 is victimized ..........................................21–22

    D. November 2022: Customer No. 3 is victimized .........................................22–23

    E. December 2022: First Undercover Operation–conspirators attempt Destination
        Double Dip Scheme .................................................................................23–25

    F. February 2023: Mrs. Disch warns George R. Grubbs, III—but the conspirators
        continue the Double Dip Scheme .............................................................25–26

    G. April 2023: Second Undercover Operation—conspirators again attempt
        Destination Double Dip Scheme...............................................................26–27

    **Count 2: RICO, 18 U.S.C. § 1962(c)**............................................................ 27–28

    **Count 3: Texas Deceptive Trade Practices Act** .........................................29–30

    **Count 4: Texas Common Law Fraud** ........................................................ 30–31

    **Count 5: Texas Civil Conspiracy** .............................................................. 31–32

Damages, Jury Demand, & Prayer for Relief ........................................................32–33

Table of Causes of Action & Named Defendants ........................................................35

**PARTIES**

1. Plaintiff Cassie Disch is an individual and a citizen of the State of Texas.

2. Defendant Grubbs Automotive GRA, LLC ("Grubbs Acura") is a limited liability company organized under the laws of the State of Texas. Grubbs Acura has a principal place of business in the State of Texas. Grubbs Acura holds Texas Automobile Dealer Franchise License No. P162320. Grubbs Acura may be served with process by serving its registered agent, John C. Shackelford, 9201 N. Central Expressway, Fourth Floor, Dallas, Texas 75231.

3. Defendant George R. Grubbs, III is an individual and a citizen of the State of Texas. He may be served with process at 1600 E. State Hwy 114, Grapevine, Texas 76051.

4. Defendant Jacob Taylor is an individual and a citizen of the State of Texas. He may be served with process at 1600 E. State Hwy 114, Grapevine, Texas 76051.

5. Defendant Al Lewis is an individual and a citizen of the State of Texas believed to be residing in the State of Oklahoma. He may be served with process at 1600 E. State Hwy 114, Grapevine, Texas 76051.

6. Defendant Tyrone Robinson is an individual and a citizen of the State of Texas. He may be served with process at 1600 E. State Hwy 114, Grapevine, Texas 76051.

7. Defendant Chris Stiles is an individual and a citizen of the State of Texas. He may be served with process at 6100 State Hwy 121, Frisco, Texas 75034.

**JURISDICTION & VENUE**

8. This action is brought pursuant to 18 U.S.C. § 1964. Because this lawsuit arises under a law of the United States, this Court has original jurisdiction over it. 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the related Texas law claims because they form a part of the

same case and controversy. 28 U.S.C. § 1367(a).

9.   Venue is proper in this district under 18 U.S.C. § 1965(a), as this is the judicial district in which Grubbs Automotive GRA, LLC has an agent. Venue in this district is also proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred within it.

**FACTS**

10.   Grubbs Acura is located at 1600 E. State Hwy 114, Grapevine, Texas, which is in the Northern District of Texas. Grubbs Acura opened for business in or about March 2021.

11.   From Grubbs Acura's opening, and until at least April 2023, the individual defendants and their coconspirators have conspired to employ and have employed a comprehensive, deceptive, and corrupt scheme against almost every prospective new car buyer that walks through the dealership's doors.

12.   Using this scheme—a "Destination Double Dip"—the individual defendants use the Grubbs Acura enterprise to defraud each new car purchaser into paying the fixed manufacturer's destination charge *twice*.



*Figure 1: Construction of Grubbs Acura was completed in March 2021—the Defendants have employed the Destination Double Dip scheme continually since the dealership's opening.*

*The Destination Double Dip Scheme*

13.   Under federal law, every new car must have a label, known as the Monroney Label, affixed to the car's window. *See* 15 U.S.C. § 1232. Among other things, the Monroney Label must disclose the manufacturer's suggested retail price ("MSRP") for the car. *Id.* § 1232(f)(1). It also must disclose the amount that the manufacturer charges the dealership for delivering the new car to the dealership's lot. *Id.* § 1232(f)(3). This amount is commonly called the destination charge, which was $1,045 for 2022 new Acura models and is $1,195 for most 2023 models. Finally, the Monroney Label must include the total vehicle price which includes the MSRP and the destination charge. *Id.* § 1232(f)(4).

14.   The destination charge is contractually fixed, disclosed under federal law, and applicable to all Acura dealerships throughout the United States regardless of their proximity to Acura's factories, which are in Ohio. Because it is a manufacturer's cost passed through to the ultimate purchaser, the destination charge is supposed to be without profit margin for the Acura dealership that sells the new car to the purchaser. But if a dealership, like Grubbs Acura, employs a destination double dip scheme against its customers, the dealership's profit margin on the second—and fraudulent—destination charge nears 100%.

15.   The defendants employ their Destination Double Dip scheme in the following manner. When a prospective new car buyer arrives at Grubbs Acura, she is greeted by a sales consultant. The sales consultant will show her one or more new Acura cars outside on the Grubbs Acura lot. The sales consultant usually explains the car's features and will take the buyer for a test drive. The new car bears the federally mandated Monroney Label which discloses the MSRP, the cost of manufacturer-added options, the destination charge, and the total vehicle price. But while outside,

the sales consultant generally tries to avoid detailed discussion of the car's selling price with the buyer. If the buyer decides to purchase the new Acura, the sales consultant takes her inside—away from the Monroney Label disclosures—purportedly to present the car's price including state-mandated taxes, title, and license fees.

16.   At that point, the sales consultant begins to employ the Destination Double Dip scheme against the buyer. As discussed further below, this is also the point at which the sales consultant often employs a second fraudulent scheme against the buyer. *See infra* ¶¶ 25–32, Grubbs Acura's "Bait and Switch Scheme."

17.   First, the sales consultant escorts the buyer to his desk. The sales consultant then leaves and later returns, sometimes accompanied by a sales manager, to present a one-page term sheet to the buyer. This term sheet is Step One of the double dip scheme. The top of the term sheet purportedly begins with the MSRP from the Monroney Label as the "selling price" for the vehicle. Several lines below, the term sheet will then add in the Monroney Label's destination charge. The term sheet then eventually sums these amounts with numerous other charges—some new and unpleasantly surprising to the victim—to reach a total, final price for the vehicle.

18.   But the representation at the top of the term sheet that the selling price is the MSRP from the Monroney Label is false. It is actually the *total* vehicle purchase price from the Monroney Label which already includes the manufacturer's destination charge. The dealership and its sales staff then knowingly and intentionally include a *second* "destination charge" line item on the term sheet in order to cheat the buyer out of at least $1,195. If the victim buyer agrees to move forward with purchasing the car, the sales consultant leaves the desk with the term sheet. Because the dealership staff knowingly withhold the term sheet from the victim's final purchase paperwork,

they further the scheme by making its detection more difficult.



*Figure 2: In Step One of the Scheme, the Defendants knowingly misrepresent the Monroney Label disclosures on the term sheet. The Defendants purposely withhold the term sheet from the victim's final purchase paperwork.*

19.   From there, the Destination Double Dip scheme moves to Step Two: the finance department. In the finance department, the fraudulent second destination charge and any other surprise Bait and Switch charges from the term sheet are bundled up into one "Total Selling Price" amount on a formal contract called a Retail Purchase Agreement. Since the victim no longer has the term sheet, she cannot compare the details from the term sheet to the bundled up "Total Selling Price" number on the Retail Purchase Agreement.



*Figure 3: In Step Two of the scheme, most of the line items from the term sheet, including the second destination charge, get lumped into one "Cash Price of Vehicle." The victim does not have the term sheet to compare and—even if she does—it is difficult to identify what amounts are included in the "cash price."*

20.  Along with the Retail Purchase Agreement and other paperwork, the finance manager also prepares an official Texas Department of Motor Vehicles ("TxDMV") form called: "Application for Texas Title and/or Registration." This application is one of two documents required to have a Texas title issued reflecting the new car's sale. The second document is the Acura Manufacturer's Certificate of Origin, which evidences the original transfer of the new car from Acura to the dealership. All Acura cars are manufactured outside of Texas; the cars therefore move through interstate commerce to arrive at Grubbs Acura in Grapevine, Texas.



*Figure 4: Acuras are manufactured in Ohio. Because Grubbs Acura sells these new Acuras in Texas, the Defendants' execution of the Destination Double Dip affects interstate commerce.*

21.    Step Three of the Destination Double Dip brings the fraudulent scheme to its completion—the actual passage of the title to the Grubbs Acura retail purchasers or their lenders. At some point after the victim drives off in her new Acura, personnel from Grubbs Acura then file the Buyer's Application for Texas Title and the manufacturer's Certificate of Origin with a county tax assessor-collector's office. The assessor-collector's office then submits that paperwork to TxDMV for titling and registration of the car in the victim's name.[1] Later, TxDMV uses the U.S. Postal Service to mail the title to the victim or to the victim's auto-loan lender.[2] Proper legal transfer of the car to the victim or her lender is essential so that the defendants can perpetuate the

---

[1] If the victim purchases the car outright with no financing, the title is issued in the name of the victim. If the victim finances the car purchase, the title is issued in the name of the victim's lender.

[2] Sometimes a lender will request an "electronic title." In this situation, the title record is transferred to the lender through the interstate use of the Internet instead of through the mail. When the loan is paid off, a physical title is sent through the U.S. Postal Service to the victim.

double dip scheme and employ it against future prospective new Grubbs Acura buyers.

22.   And—to be clear—the Grubbs Acura conspirators employ the Destination Double Dip scheme against almost every prospective new Grubbs Acura buyer. A Grubbs Acura employee has stated that the dealership sells approximately 200 new Acura cars per month. Based on that statement, it is probable that the Grubbs Acura conspirators have defrauded new Acura buyers out of approximately $5,000,000–$7,000,000 since the dealership's opening in March 2021.



*Figure 5: A fraud of this magnitude is serious. Were it to be charged criminally, the defendants would likely face an approximate five-year federal prison sentence upon conviction. See USSG §2B1.1.*

23.   Almost all Grubbs Acura buyers fail to detect the Destination Double Dip scheme and are victimized by it because: (a) the sales consultant fails to present the Monroney Label disclosures alongside the term sheet to the victim, (b) the sales consultant employs techniques, pressure, and distractions designed to get the victim to agree to and sign the term sheet's double-dipped price as quickly as possible, (c) the sales consultant knows that the term sheet misrepresents the destination charge and will attempt to conceal that misrepresentation, (d) the Bait-and-Switch scheme (described in ¶¶ 25–32) distracts the victim's attention away from the destination charge, (e) once the victim agrees to the term sheet's double-dipped price, the sales consultant leaves the desk with the term sheet, and (f) the sales consultant does not bring the term sheet back and it is not included within the victim's final purchase paperwork package.

24.   The fact that the Grubbs Acura conspirators do not disclose that they double-charge their customer-victims for the manufacturer's destination charge has the natural tendency to influence, or would be capable of influencing, the decision-making process of those customers who would rightfully want to consider whether they should instead buy a new Acura from a competing Acura dealership that does not double-dip its customers on the destination charge.

### The Bait-and-Switch Scheme

25.   The defendants also routinely employ a bait-and-switch scheme against their customers. They advertise new Acura cars online for a low price. After the low price baits the victim to visit the Grubbs Acura dealership, a sales consultant shows the victim a car with the same low price displayed on the car's window. But after the victim decides to move forward with the purchase, the defendants renege on the lower bait price in favor of a higher switched-in price that includes surprise charges. The first surprise charge is a dealer "market adjustment." The defendants

routinely switch in "market adjustment" increases of $5,000–$10,000 against the scheme's baited victims. And in at least one instance, they have tried to switch in a "market adjustment" of $25,000.

26.  In a recording, Defendant George R. Grubbs, III has admitted that such "market adjustments" amount to a form of price gouging of the dealership's customers.

27.  The second surprise bait-and-switch charge is for a purportedly proprietary "Grubbs Family Connect" smart phone application. The "Grubbs Family Connect" app is no more than a rebranded imposter app called "Ikon Connect" developed by an Arlington, Texas-based company called VBI Group LLC doing business as "Ikon Technologies." Ikon Technologies holds itself out as a company "founded by dealers for dealers." Ikon Technologies installs a GPS tracker in the new car for the dealership to mitigate the risk of theft to the dealership and to the dealership's floorplan lender.[3] The tracker and the app is a dealership cost that the defendants then attempt to offload by "selling through" the GPS tracker to their bait-and-switch victims via the imposter "Grubbs Family Connect" app.

28.  The conspirators routinely surprise their bait-and-switch victims with an $1,800-or-more charge for this "Grubbs Family Connect" app. The dealership's internal paperwork refers to this surprise charge as a three-year or five-year "IKON upsell." Further, most of the purported Ikon/"Grubbs Family Connect" app features are unnecessary to the bait-and-switch victims because each new Acura, at no extra charge for the first three years, comes pre-equipped with most of the same features enabled through the Remote package of Acura's AcuraLink app.

29.  The "dealer market value" adjustment and the "Grubbs Family Connect" app charges:

---

[3] A "floorplan lender" is a financial company that finances a car dealership's inventory so that the dealership does not need to invest its own capital into its inventory.

(a) are not disclosed online in the dealership's advertised price, (b) are not disclosed on the car's Monroney Label, and (c) are not otherwise disclosed on the car in any separate labeling. Instead, the sales consultant springs these charges upon the baited victim via a surprise disclosure on the term sheet at the consultant's desk.

30.   As the Federal Trade Commission has said, this type of bait-and-switch scheme "has the effect of wasting consumers' time traveling to and negotiating with the dishonest dealership, time which would otherwise be spent pursuing truthful offers in the absence of deception." Motor Vehicle Dealers Trade Regulation Rule, 87 Fed. Reg. 42037 (July 13, 2022).



*Figure 6: The defendants bait prospective buyers with one price online and on the car.*



*Figure 7: "Market adjustments" are not the only switched-in surprise charges. The defendants often also include $1,800 for the purportedly proprietary "Grubbs Family Connect" app.*

31.  Beyond its own innate perfidy, the Bait-and-Switch Scheme also serves to further the Destination Double Dip scheme by immediately focusing the victim's attention on the surprising, large, and unadvertised price increases and *away* from the hidden second and fraudulent destination charge.

32.  The individual defendants—and other identified coconspirators not yet named as defendants—have a financial incentive to employ the Bait-and-Switch and Destination Double Dip Schemes because of the larger and fraudulent profit margin that results from the schemes. More profit on each car sale results in more money in their pockets through the payment of: (a) higher sales commissions, (b) bonuses, or (c) in the case of Mr. Grubbs, III, distributions or retained capital appreciation by virtue of being an indirect equity owner of the dealership.

### Count 1: Racketeer Influenced and Corrupt Organizations (RICO) Conspiracy
18 U.S.C. § 1962(d) (conspiring to violate 1962(c))

33.    Mrs. Disch realleges all preceding paragraphs and figures as if fully set forth herein.

34.    Count 1 is brought against Defendants George R. Grubbs, III, Jacob Taylor, Al Lewis, Tyrone Robinson, and Chris Stiles (the "Count 1 Defendants").

35.    From in or about March 2021 and continuing through in or about April 2023, the Count 1 Defendants and their coconspirators agreed and conspired to conduct and participate in the conduct of the affairs of Grubbs Acura through a pattern of racketeering activity, namely: the knowing and intentional employment of the Destination Double Dip Scheme against Grubbs Acura's customers in violation of 1962(c).

### *Overt Acts in Furtherance of the Conspiracy*

### *A. October 2021: TxDMV warning, but the conspirators continue the Double Dip Scheme*

36.    In October 2021, Grubbs Acura offered a new Acura 2022 MDX for sale. The Monroney Label on the side window of this MDX presented the following disclosures: MSRP of $51,900, a $500 premium paint charge, and the manufacturer's destination charge of $1,045. The sum of those numbers, the Total Vehicle Price disclosed on the Monroney Label, was therefore $53,445. There was a torn half-sheet of paper taped to the front windshield of this MDX entitled, "Addendum." The Addendum's top line started with "MSRP." But instead of listing the correct MSRP of $51,900 from the Monroney Label, it falsely listed $53,445—the Total Vehicle Price from the label. As described above, the Total Vehicle Price already includes the destination charge. This same MDX was offered for sale online for a price of $53,445. Beneath that online price was an "Important Disclosures" pop-up which, among other things, falsely stated that the $53,445 price *did not* include the $1,045 destination charge even though it did.

37.   On October 21, 2021, an investigator from TxDMV's enforcement division emailed Defendant Jacob Taylor and warned him that this misrepresentation concerning the destination charge violated several Texas laws. On the same day, another investigator sent a notice letter via mail and certified mail to Grubbs Acura containing the same warning. Although the dealership cured the online disclosure, Mr. Taylor, the other Count 1 Defendants, and their coconspirators continued to employ the Destination Double Dip scheme against Grubbs Acura's new car customers.

**B. August 2022: Plaintiff Cassie Disch is Victimized by the Destination Double Dip Scheme**

38.   On August 6, 2022, Mrs. Disch and her husband went to Grubbs Acura seeking to buy a specific, new 2023 Acura MDX that Grubbs Acura had advertised online. Mrs. Disch has been a loyal Acura customer; this MDX was to be her fourth new Acura purchase over the preceding twenty years.



*Figure 8: Cassie with her husband, Bill, and their dog, Bentley. Prior to being victimized by Grubbs Acura, Cassie was a loyal Acura customer.*

39. At the dealership, Mrs. Disch was eventually greeted by Fred Jones, a Grubbs Acura Sales Consultant and coconspirator who has not yet been named as a defendant in this suit.

40. Mr. Jones took Mrs. Disch outside to the lot and showed her the new 2023 Acura MDX. The Monroney Label on the side window of this MDX presented the following disclosures: MSRP of $63,000, a $500 premium paint charge, and the manufacturer's destination charge of $1,195. The sum of those numbers, the Total Vehicle Price disclosed on the Monroney Label, was therefore $64,695. There was no other addendum, label, or pricing information on the MDX. In her mind, Mrs. Disch was prepared to pay the Total Vehicle Price as advertised and as offered plus taxes, registration, and titling fees.

41. Mr. Jones then took Mrs. Disch to his desk inside the dealership. She and her husband waited while Mr. Jones left the desk to get the final pricing paperwork for the MDX.

42. Later, Mr. Jones and Defendant Chris Stiles returned to the desk. Mr. Stiles presented Mrs. Disch with a one-page term sheet containing—among other surprise price increases—a $10,000 dealer "market adjustment." Mrs. Disch was shocked by this increase. She told Messrs. Jones and Stiles that there was "no way in hell" she was paying an extra $10,000 for the car. Mr. Stiles began to argue with her and attempted to justify why they had added in this charge. The term sheet also included a $1,695 charge for the Grubbs "Pro Pack," an amalgam of high-profit margin "add-ons" such as window tinting, wheel locks, door guards, and a rubber cargo mat.

43. In the middle of this bait-and-switch moment, Mrs. Disch failed to notice that she was simultaneously being victimized by the Destination Double Dip Scheme. The term sheet's representation that the selling price was the MSRP from the Monroney Label was false. Instead, the term sheet surreptitiously represented the $64,695 Total Vehicle Price disclosure from the

Monroney Label—which already included the $1,195 destination charge—as being the label's MSRP. Messrs. Stiles and Jones then knowingly and intentionally included a second line item on the term sheet for "Destination: $1,195" in order to cheat Mrs. Disch out of an extra $1,195.

44.   Mrs. Disch and her husband got up to leave. To prevent that, Mr. Stiles offered to reduce the $10,000 "dealer market value" adjustment down to $5,000. Mr. and Mrs. Disch still left. While they were driving back home, Mr. Stiles called Mrs. Disch and asked if she would come back if he reduced the adjustment down to $3,000. Mrs. Disch responded that she would agree to no more than $1,500. When Mrs. Disch returned to Grubbs Acura, they presented her a revised term sheet reflecting the $1,500 adjustment. The second, fraudulent destination charge remained on this term sheet.

45.   Mrs. Disch pointed out that, as a four-time Acura buyer, she was also supposed to receive a $500 customer loyalty rebate reduction to the price. Mr. Stiles assured her that they would make that reduction on the final paperwork in the financing department. One she agreed to move forward, Mr. Stiles kept the term sheet and Mrs. Disch was shuttled to the finance department.

46.   In the finance department, the fraudulent second destination charge was lumped into one total "Cash Price of Vehicle" amount on Mrs. Disch's Retail Purchase Agreement. The term sheet was not included in the paperwork that the finance manager showed her, so she had no way to compare the details from the term sheet to the bundled-up total "Cash Price" on the Retail Purchase Agreement. The finance paperwork also surreptitiously inflated the total "Cash Price" by an additional $499.16, which Mrs. Disch did not notice at the time.

47.   The finance manager then pointed out a $500 reduction on the "Rebate" line of the

Retail Purchase Agreement to show Mrs. Disch that the dealership was providing her with the Acura loyalty rebate she was entitled to. But because the defendants had already surreptitiously inflated the topline "Cash Price" by the $499.16, the dealership actually cheated Mrs. Disch out of 99.8% of her loyalty rebate as well.



The Finance Manager drew Mrs. Disch's attention to the $500 Acura loyalty rebate he applied for her.

But he concealed the fact that he inflated the top line price by $499.16 to offset it.

48.  Mrs. Disch was deceived by Messrs. Stiles and Jones and relied on the term sheet's false representation concerning the Monroney Label's MSRP. This deception caused Mrs. Disch to pay the Monroney Label's manufacturer's destination charge *twice*. Had Messrs. Stiles, Jones, the Count 1 Defendants, or their coconspirators told Mrs. Disch that they routinely attempt to cheat every new Grubbs Acura customer out of $1,195, she would not have done business with Grubbs Acura.

49.  To her detriment, Mrs. Disch wrote Grubbs Acura a check for $73,874.57 to pay for the MDX. This amount included the $1,195 of fraudulent proceeds the Count 1 Defendants obtained by employing the Destination Double Dip Scheme against Mrs. Disch as well as an additional $75 of Texas motor vehicle sales taxes on those proceeds.

50.  Before she left, Mrs. Disch noticed that the defendants had not included the term sheet within her purchase paperwork. She told Mr. Jones that it was missing and asked him to provide a copy of it. Mr. Jones appeared to get nervous and said, "That's in Chris (Stiles's) office, let me see if I can go get it." Mrs. Disch observed Mr. Jones and Mr. Stiles talking for several minutes within Mr. Stiles's office. Eventually, Mr. Jones returned and gave Mrs. Disch a copy of the term sheet.

51.  After Mrs. Disch returned home with her new MDX, she discovered that she had been charged twice for the manufacturer's destination charge and that she had not been given the $500 Acura loyalty rebate. She brought this to Mr. Jones' attention via text messages. She brought this to Defendant Al Lewis's attention via phone calls. And she brought this to Defendant Jacob Taylor's attention via emails. Eventually, she also brought this to the attention of Defendant George R. Grubbs, III. None of these defendants or their coconspirators refunded the double dip

fraud proceeds or the $500 rebate to Mrs. Disch.

52.  Several weeks later, Mrs. Disch received the Texas Title for the MDX via United States Postal Service delivery to her home.

### C. September 2022: Customer No. 2 is Victimized by the Destination Double Dip Scheme

53.  On September 10, 2022, another customer, Customer No. 2, went to Grubbs Acura seeking to buy a new 2023 Acura MDX that Grubbs Acura had advertised online.

54.  At the dealership, Customer No. 2 was greeted by Rachid Lagrini, a Grubbs Acura Sales Consultant and coconspirator who has not yet been named as a defendant in this suit.

55.  Mr. Lagrini took Customer No. 2 outside to the lot and showed the customer a new 2023 Acura MDX. The Monroney Label on the side window of this MDX presented the following disclosures: MSRP of $53,750, a $500 premium paint charge, and the manufacturer's destination charge of $1,195. The sum of those numbers, the Total Vehicle Price disclosed on the Monroney Label, was therefore $55,445.

56.  Mr. Lagrini then took Customer No. 2 to his desk inside the dealership and eventually presented Customer No. 2 with the one-page term sheet containing several bait-and-switch surprises: a $10,000 dealer "market adjustment" and an $1,800 charge for the unnecessary "Grubbs Family Connect" imposter app.

57.  Surprised by these new charges, Customer No. 2 failed to notice that she was simultaneously being victimized by the Destination Double Dip Scheme. The term sheet's representation that the selling price was the MSRP from the Monroney Label was false. Instead, the term sheet surreptitiously represented the $55,445 Total Vehicle Price disclosure from the Monroney Label—which already included the $1,195 destination charge—as being the label's

MSRP. The Count 1 Defendants then knowingly and intentionally included a second line item on the term sheet for "Destination: $1,195" in order to cheat Customer 2 out of an extra $1,195.

58.   In the finance department, the fraudulent second destination charge was lumped into the total "Cash Price" amount on Customer No. 2's Retail Purchase Agreement. The term sheet was not included in the paperwork that the finance manager showed her and it was never provided to her.

59.   Customer No. 2 made a $10,000 cash down payment, traded in her prior car, and financed the remainder of the 2023 Acura MDX purchase.

60.   Several weeks after Customer 3 purchased the MDX, either: (a) the United States Postal Service, or (b) the interstate use of the Internet, was used to transfer physical or electronic title to Customer No. 2's auto lender.

### D. November 2022: Customer No. 3 is Victimized by the Destination Double Dip Scheme

61.   In or about November 2022, Customer No. 3 went to Grubbs Acura to purchase a new 2023 Acura MDX that Grubbs Acura had advertised online. At the dealership, Customer No. 3 was greeted by David Zimlich, a Grubbs Acura Sales Consultant and coconspirator who has not yet been named as a defendant in this suit.

62.   As they have done against almost all Grubbs Acura prospective new car buyers, the Count 1 Defendants and their coconspirators deployed the Destination Double Dip scheme on Customer No. 3.

63.   Several weeks after Customer No. 3 bought the MDX, either: (a) the United States Postal Service, or (b) the interstate use of the Internet, was used to transfer physical or electronic title to Customer No. 3's auto lender.

64.   Customer No. 3 later discovered that he had been victimized by the Destination Double Dip scheme. He brought this to Defendant Al Lewis's attention. Mr. Lewis refused to return the double dip fraud proceeds to Customer No. 3.

**E. December 2022: Undercover Operation—conspirators attempt Destination Double Dip Scheme**

65.   On December 20, 2022, an Undercover Investigator (UI-One) went to Grubbs Acura posing as a prospective new Acura buyer. UI-One is a retired Federal Bureau of Investigation Special Agent.

66.   At the dealership, UI-One was greeted by Ed Barton, a Grubbs Acura sales consultant and coconspirator who has not yet been named as a defendant in this lawsuit. Mr. Barton explained that Grubbs Acura was a family-owned business run by George R. Grubbs, III, who was upstairs in his office.

67.   Mr. Barton then showed UI-One a new 2023 Acura MDX. The Monroney Label on the side window of this MDX presented the following disclosures: MSRP of $63,500, a $500 premium paint charge, and the manufacturer's destination charge of $1,195. The sum of those numbers, the Total Vehicle Price disclosed on the Monroney Label, was therefore $65,195.

68.   Mr. Barton then took UI-One to his desk inside the dealership. Mr. Barton introduced UI-One to his "boss," Defendant Al Lewis. Mr. Barton told UI-One that he had previously worked with Mr. Lewis at a BMW dealership, that Mr. Lewis was a part-time preacher, and that Mr. Lewis "tries to help people in every feasible way."



*Figure 9: Defendant Al Lewis has knowingly directed sales consultants to deploy the Destination Double Dip Scheme against Grubbs Acura's new car customers.*

69.  Mr. Barton, under Mr. Lewis's direction, then employed the Destination Double Dip scheme against UI-One by presenting her the one-page term sheet, which falsely presented the Monroney Label's Total Vehicle Price disclosure of $65,195—which already included the $1,195 destination charge—as being the label's MSRP. Messrs. Lewis and Barton then knowingly and intentionally included a second line item on the term sheet for: "Destination: $1,195" in an attempt to cheat UI-One out of an extra $1,195. Mr. Barton then walked UI-One through the term sheet: "So here's MSRP, the selling price, *the destination fee*, the Pro Pack, which is the things we add to the car . . . the door edge guards, the splash guards . . . and then the Family Connect." In continuing to walk UI-One through the pricing on the term sheet, Mr. Barton told UI-One: "we're very transparent with everything" and that "not every dealership does that."

70. Mr. Barton then explained that the destination fee (i.e., the second fraudulent destination fee line item) was the fee that Acura charged to Grubbs Acura for delivering the MDX to the dealership and that since Acura charged them for that fee, they passed that charge through

to the customer.

**F. February 2023: Ms. Disch warns George R. Grubbs, III—but the conspirators continue the Destination Double Dip Scheme**

71.    On February 19, 2023, Plaintiff Cassie Disch sent George R. Grubbs, III a letter via USPS certified mail to Mr. Grubbs' office at Grubbs Acura. The dealership signed the delivery receipt for this letter on February 23, 2023. In the letter, Mrs. Disch explained the Destination Double Dip scheme to Mr. Grubbs and, among other things, stated: "You should immediately instruct all of your sales consultants to ***stop*** this fraudulent practice of sneakily charging customers for ***two*** manufacturer destination charges without the customer's knowledge!" The letter also explained that the practice violated the Texas Deceptive Trade Practices Act and several other laws.

'



*Figure 10: Defendant George Grubbs, III, in a recorded statement, has admitted that his dealerships price gouge some of their customers.*

72.    Undeterred, the Count 1 Defendants and their coconspirators have continued to employ the Destination Double Dip scheme against almost every prospective new Acura buyer that visits

Grubbs Acura.

### G. *April 2023: Second Undercover Operation—conspirators again attempt Destination Double Dip Scheme*

73.    On April 20, 2023—two months after Mr. Grubbs received Mrs. Disch's letter—another Undercover Investigator (UI-Two) went to Grubbs Acura posing as a prospective new Acura buyer. UI-Two is also a retired Federal Bureau of Investigation Special Agent.

74.    At the dealership, UI-Two was greeted by Madeline Kenning, a Grubbs Acura sales consultant and coconspirator who has not yet been named as a defendant in this lawsuit.

75.    Ms. Kenning showed UI-Two a new 2023 Acura TLX sedan. The Monroney Label on the side window of this TLX presented the following disclosures: MSRP of $55,550, and the manufacturer's destination charge of $1,195. The sum of those numbers, the Total Vehicle Price disclosed on the Monroney Label, was therefore $56,745.

76.    While test driving the Acura TL, UI-Two asked Ms. Kenning if the window sticker price was the cost of the car except for taxes, title, and license fees. Ms. Kenning answered yes but told UI-Two that for the "trunk tray and stuff like that" (i.e., the "Pro Pack" amalgam of high-profit dealership add-ons) there was an extra fee, and that fee would be the only addition to the price. Ms. Kenning did not mention increasing the offered price with a dealer "market adjustment."

77.    Back inside the dealership, Ms. Kenning took UI-Two to her desk. Ms. Kenning later told UI-Two that she was "going to get the numbers" on the Acura TLX. Ms. Kenning then left UI-Two sitting at the desk for approximately eight minutes while she met with Defendant Tyrone Robinson.

78.    Ms. Kenning returned and, under the direction of Mr. Robinson, she then employed the Destination Double Dip scheme against UI-Two by presenting her the one-page term sheet that

falsely presented the Monroney Label's Total Vehicle Price disclosure of $56,745—which already included the $1,195 destination charge—as being the label's MSRP. Ms. Kenning then knowingly and intentionally included a second line item on the term sheet for: "Destination: $1,195" in an attempt to cheat UI-Two out of an extra $1,195. The term sheet also included a bait-and-switch surprise not mentioned during the earlier test drive: a dealer "Market Adjustment" increase of $5,000. Finally, the term sheet also disclosed a $2,995 amount that the conspirators wanted for the Grubbs Acura "Pro Pack" items: wheel locks, splashguards, window tinting, door edge guards, and an all-weather trunk tray.

79.    Ms. Kenning then walked UI-Two through the term sheet: "So you've got the selling price of the vehicle, *the destination*, the protection package." UI-Two then specifically asked Ms. Kenning if the destination charge line item disclosed on the term sheet was the destination charge that UI-Two saw outside on the TLX's Monroney Label. Ms. Kenning responded, "Right." This response was knowingly and intentionally false as the destination charge from the Monroney Label was already hidden in the term sheet's misrepresented "MSRP/Retail" line item.

### Count 2: RICO
18 U.S.C. § 1962(c)

80.    Mrs. Disch realleges all preceding paragraphs and figures as if fully set forth herein.

81.    Count 2 is brought against Defendants George R. Grubbs, III, Jacob Taylor, Al Lewis, Tyrone Robinson, and Chris Stiles (the "Count 2 Defendants").

82.    Grubbs Automotive GRA, LLC ("Grubbs Acura") is a limited liability company organized under the laws of the State of Texas. Because Grubbs Acura is a legal entity, it is an enterprise for purposes of the Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. § 1961(4). Through the out-of-state acquisition of new Acura cars and their subsequent sales within

27

the State of Texas, Grubbs Acura is engaged in activities that affect interstate commerce.

83.  The Count 2 Defendants are or were employed by, or are or were otherwise associated with, the Grubbs Acura enterprise.

84.  The Count 2 Defendants and their coconspirators agreed to and did conduct and participate in the conduct of Grubbs Acura's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Grubbs Acura's customers, including Plaintiff Cassie Disch, by employing the Destination Double Dip Scheme against them. The Count 2 Defendants have continually employed the scheme against almost all of Grubbs Acura's new car customers for a period of time exceeding two years.

85.  Pursuant to and in furtherance of this fraudulent scheme, the Count 2 Defendants committed multiple predicate acts of mail and/or wire against Grubbs Acura's new car customers in violation of 18 U.S.C. §§ 1341 and/or 1343. *See* 18 U.S.C. § 1961(1).

86.  These predicate acts, including: (a) the August 2022 commission of fraud against Plaintiff Cassie Disch, (b) the September 2022 commission of fraud against Customer No. 2, (c) the November 2022 commission of fraud against Customer No. 3, (d) the December 2022 attempted commission of fraud against UI-One, and (e) the April 2023 attempted commission of fraud against UI-Two, constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

87.  The Count 2 Defendants have directly and indirectly conducted and participated in the conduct of the Grubbs Acura enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

88.  As a direct and proximate result of the Count 2 Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff Cassie Disch has been injured in her property.

**Count 3: Texas DTPA**

89.  Mrs. Disch realleges all preceding paragraphs and figures as if fully set forth herein.

90.  Count 3 is brought against Defendants Grubbs Automotive GRA, LLC d/b/a Grubbs Acura, George R. Grubbs, III, and Jacob Taylor (the "Count 3 Defendants").

91.  On or about February 23, 2023, the Count 3 Defendants were given notice in writing of Mrs. Disch's potential Texas Deceptive Trade Practices Act ("DTPA") claim against them pursuant to Tex. Bus. & Com. Code § 17.505. As of the date of this lawsuit's filing, at least 60 days have passed from their receipt of written notice. The Count 3 Defendants never responded to Mrs. Disch's notice. Further, even after receiving Mrs. Disch's letter, the Count 3 Defendants have continued to deploy the Destination Double Dip scheme against Grubbs Acura's new car customers.

92.  Throughout this Complaint, whenever it is alleged that other defendants or coconspirators not named in Count 3 committed an act, failed to perform an act, made a representation or a statement, or failed to make a disclosure, it is alleged that the Count 3 Defendants acted or failed to act through their authorized agents, servants, employees or representatives acting with either expressed, implied, apparent, direct and/or ostensible authority, or that the Count 3 Defendants subsequently ratified these acts, failures to act, representations, statements, or conduct.

93.  Further, it is alleged that the Count 3 Defendants were engaged in a fraudulent joint venture with other coconspirators not named in Count 3 for their mutual benefit and acted as each other's agents with all express, implied, direct and/or ostensible authority to so act, and as such are vicariously liable for the acts, omissions, statements, and conduct of the other alleged herein.

94.   Plaintiff Cassie Disch is a consumer entitled to bring Count 3 for relief under the DTPA. The Count 3 Defendants' August 6, 2022, employment of the Destination Double Dip scheme and the Bait-and-Switch scheme against her is actionable under the following provisions of the DTPA: (a) advertising goods with intent not to sell them as advertised, *see* Tex. Bus. & Com. Code § 17.46(b)(9), (b) making false or misleading statements of fact concerning the reasons for, existence of, or amount of price reductions, *see* Tex. Bus. & Com. Code § 17.46(b)(11), and (c) failing to disclose information concerning goods which was known at the time in order to induce Mrs. Disch to enter into a transaction which she would have not otherwise entered, *see* Tex. Bus. & Com. Code § 17.46(b)(24). Mrs. Disch relied on the Defendants' misrepresentations to her detriment.

95.   Mrs. Disch is also entitled to bring Count 3 for relief under the DTPA because the Count 3 Defendants' employment of the Destination Double Dip scheme and the Bait-and-Switch scheme against her constitute unconscionable actions under Tex. Bus. & Com. Code § 17.50(a)(3).

96.   The Count 3 Defendants' conduct described herein was a producing cause of Mrs. Disch's damages. Further, the Count 3 Defendants' conduct was committed knowingly and intentionally, entitling Mrs. Disch to seek the trebling of her economic and mental anguish damages in accordance with the DTPA.

## Count 4: Texas Common Law Fraud

97.   Mrs. Disch realleges all preceding paragraphs and figures as if fully set forth herein.

98.   Count 4 is brought against Grubbs Automotive GRA, LLC d/b/a Grubbs Acura.

99.   On August 6, 2022, when Messrs. Stiles and Jones victimized Mrs. Disch with the Destination Double Dip Scheme, they made a material misrepresentation to Mrs. Disch—that she was paying the single $1,195 destination charge disclosed pursuant to federal law. *See* 15 U.S.C. §

1232(f)(3). This representation was false because Messrs. Stiles and Jones tricked Mrs. Disch into paying the $1,195 destination charge *twice* via their oral and written misrepresentations concerning the terms of sale.

100.  When they employed the Destination Double Dip scheme against Mrs. Disch, Messrs. Stiles and Jones knew that the term sheet disclosure regarding the destination charge was false or they made such disclosure recklessly without any knowledge of the truth as a positive assertion.

101.  Messrs. Stiles and Jones made the false representation concerning the destination charge to Mrs. Disch with the intent that she should act upon it and purchase the MDX.

102.  Mrs. Disch justifiably relied on their misrepresentation concerning the destination charge, did in fact purchase the MDX, and thereby suffered economic injury as a result.

103.  Grubbs Acura is liable for this intentional tort committed by Messrs. Stiles and Jones because they were employees of Grubbs Acura and defrauded Mrs. Disch while acting within the scope of their employment. Specifically, in defrauding her they acted: (a) within their general authority as employees of the dealership, (b) in furtherance of Grubbs Acura's business, and (c) for the accomplishment of the object for which they were hired—i.e., to sell new cars.

## Count 5: Texas Civil Conspiracy

104.  Mrs. Disch realleges all preceding paragraphs and figures as if fully set forth herein.

105.  Count 5 is brought against George R. Grubbs III, Jacob Taylor, Al Lewis, Tyrone Robinson, and Chris Stiles (the "Count 5 Defendants").

106.  From in or about March 2021 and continuing through in or about April 2023, the Count 5 Defendants and their coconspirators, employees of Grubbs Acura, agreed and conspired for an unlawful purpose, namely: the knowing and intentional employment of the Destination Double Dip

scheme against Grubbs Acura's customers.

107. The Count 5 Defendants had a meeting of the minds on the object of this conspiracy, namely: to defraud each new car customer into paying the fixed manufacturer's destination charge twice. The conspiracy's object is a Texas DTPA violation and common law fraud.

108.  At least one of the Count 5 Defendants committed an unlawful, overt act to further the object of the conspiracy as described above.

109.  Mrs. Disch suffered injury as a proximate result of the Count 5 Defendants wrongful acts.

### Damages

110. As a direct and proximate result of defendants acts and omissions outlined above, Mrs. Disch has suffered the damages described below.

111. Mrs. Disch incurred economic damages as a result of Defendants deployment of the Destination Double Dip and Bait-and-Switch schemes against her. These damages include payment of the second fraudulent destination charge and the additional taxes associated with that charge.

112. Mrs. Disch also incurred mental anguish damages as a result of the defendants deployment of the Destination Double Dip and Bait-and-Switch schemes against her.

113. The damages suffered by Mrs. Disch also resulted from fraud. Accordingly, Mrs. Disch seeks exemplary damages, not to exceed an amount equal to the greater of: (a) two times the amount of economic damages plus an amount of noneconomic damages found by the jury, not to exceed $750,000 or (b) $200,000, which in the opinion of the jury is necessary to punish the defendants and deter similar conduct in the future by the defendants and others.

## Jury Demand

114. Mrs. Disch requests a trial by jury.

## Prayer for Relief

Plaintiff Cassie Disch seeks a judgment against defendants for:

    a.  compensatory and actual damages in an amount deemed sufficient by the trier of fact;

    b.  treble damages pursuant to 18 U.S.C. § 1964(c);

    c.  treble damages pursuant to Tex. Bus. & Com. Code § 17.50(b)(1);

    d.  or, in the alternative to treble damages under § 17.50(b)(1), punitive and exemplary damages;

    e.  attorney's fees pursuant to 18 U.S.C. § 1964(c) and Tex. Bus. & Com. Code § 17.50(d);

    f.  costs of court;

    g.  interest allowed by law for prejudgment and post-judgment interest; and

    h.  all other relief the Court deems appropriate.

Respectfully submitted,

JEFF DANIEL CLARK
Texas State Bar No. 24109732
GreenClark PLLC
8350 N. Central Expy. 19th Floor
Dallas, Texas 75206
817.953.8699
817.668.0659 (facsimile)
jeff@greenclark.law
www.greenclark.law
*Lead Counsel for Mrs. Disch*

STEPHEN J. GREEN
Texas State Bar No. 24082163
GreenClark PLLC
8350 N. Central Expy. 19th Floor
Dallas, Texas 75206
817.953.8699
817.668.0659 (facsimile)
stephen@greenclark.law
www.greenclark.law
*Cocounsel for Mrs. Disch*

**Table of Causes of Action & Named Defendants**

| Count | Defendants |
|---|---|
| 1-RICO Conspiracy 18 U.S.C. § 1962(d) | George R. Grubbs, III<br>Jacob Taylor<br>Al Lewis<br>Tyrone Robinson<br>Chris Stiles |
| 2-RICO 18 U.S.C. § 1962(c) | George R. Grubbs, III<br>Jacob Taylor<br>Al Lewis<br>Tyrone Robinson<br>Chris Stiles |
| 3-Texas DTPA | Grubbs Automotive GRA, LLC d/b/a Grubbs Acura<br>George R. Grubbs, III<br>Jacob Taylor |
| 4-Texas Common Law Fraud | Grubbs Automotive GRA, LLC d/b/a Grubbs Acura |
| 5-Texas Civil Conspiracy | George R. Grubbs, III<br>Jacob Taylor<br>Al Lewis<br>Tyrone Robinson<br>Chris Stiles |