UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**CASSIE DISCH, ET AL.,**

  Plaintiffs,

v.                                No. 4:23-cv-01202-P

**GRUBBS AUTOMOTIVE GRA,
LLC, ET AL.,**

  Defendants.

## MEMORANDUM OPINION & ORDER

Before the Court is Defendants' Motion to Compel Arbitration and Stay Case Pending Arbitration. ECF No. 38. Having considered the Motion, briefs, and applicable law, the Court concludes the Motion should be and hereby is **GRANTED**.

## BACKGROUND

Plaintiffs Cassie Disch and Jo Ellen Bergstrom bought cars from Grubbs Acura in Grapevine, Texas. Both Plaintiffs claim Grubbs overcharged them for their vehicles by "double-dipping," i.e., by adding a "destination charge" twice to their respective bills. Disch sued first, filing this action against Defendants (Grubbs and its owners/agents) on October 30, 2023. Her Original Complaint alleged counts under the Racketeer Influenced & Corrupt Organizations Act ("RICO") and the Texas Deceptive Trade Practices Act ("DTPA"), along with claims for common law fraud and civil conspiracy. She amended her complaint in May 2024 to add Bergstrom, who brings identical claims.

Defendants moved to compel arbitration on May 24, arguing both Plaintiffs signed arbitration agreements contemporaneously with their car purchases. Defendants also ask the Court to stay this action while the Parties' dispute proceeds to arbitration. Plaintiffs push back, arguing the arbitration agreement is invalid, has been waived, and does not cover all their claims. As explained below, Defendants persuade that

this case should be arbitrated and should be stayed until such arbitration is complete. Given the clarity of the relevant arbitration agreements and controlling legal precedents, the Court need not wait for Defendants' reply brief before rendering a decision on the instant Motion.

## LEGAL STANDARD

Federal courts have become increasingly pro-arbitration for the past several decades. *See, e.g.*, *Gilmer v. Interstate Johnson Lane Corp.*, 500 U.S. 20, 30 (1991) (recognizing the "current strong endorsement of the federal statutes favoring [arbitration]"). Simply put, "[a]rbitration is favored in the law." *Grigson v. Creative Artist Agency, LLC*, 210 F.3d 524, 526 (5th Cir. 2000). Accordingly, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). This presumption is baked into the very fabric of the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. §§ 1–16.

The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, "there is a strong presumption in favor of arbitration and a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004). Beyond the general pro-arbitration presumption, three factors favor enforcement of a given arbitration agreement: (1) whether the agreement was written, (2) whether the underlying transaction involved interstate commerce, and (3) whether the agreement covers the claims at issue." *See Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996).

## ANALYSIS

Defendants furnished facially relevant arbitration agreements signed by Disch and Bergstrom. *See* ECF No. 38-2. As the Parties resisting arbitration, Plaintiffs bear the burden in proving the arbitration agreements were defective, invalid, or otherwise inapplicable. *See Carter*, 362 F.3d at 297. As explained below, they fail

2

to do so. In resisting Defendants' Motion, Plaintiffs argue (1) they don't recall signing the arbitration agreements because Grubbs utilized ostensibly shady tactics to effectuate them, (2) subsequent agreements superseded the arbitration agreements, (3) Defendants waived their right to arbitrate this dispute, and (4) Plaintiffs' RICO claims aren't within the claims contemplated by the arbitration agreements. *See* ECF No. 43 at 5–14.

### A. The Arbitration Agreements are Valid and Unwaived.

Plaintiffs make a compelling case that Grubbs Acura, not unlike others in the industry, resorts to shady tactics. *See* ECF No. 43. Indeed, subsequent interactions between Grubbs and an undercover investigator establish as much. *Id.* at 2. But "individuals seeking to avoid the enforcement of an arbitration agreement face a high bar." *Carter*, 362 F.3d at 297. And Plaintiffs do not hurdle that bar here.

*First*, weighing against Plaintiffs' allegations of chicanery are their signatures on the relevant agreements. *See* ECF No. 38-2 at 9–16. Under the FAA, an arbitration agreement is presumptively valid and enforceable absent "such grounds as exist at law or equity for the revocation of any contract." *See* 9 U.S.C. § 2. Thus, without a legal or equitable reason to overlook someone's signature on an arbitration agreement, that signature represents their adherence to its terms. That remains true even where a plaintiff "does not recall signing it." ECF No. 43 at 2. Consequently, Plaintiffs' invalidity arguments start ten feet behind the starting line here.

*Second*, Plaintiffs argue the Buyer's Order (which contains arbitration language) was superseded by the Retail Purchase Agreement (which doesn't). *See* ECF No. 43 at 6. That's because "[t]he binding contract, or the RPA . . . shares the terms of the Buyer's Order *without* the arbitration agreement." *Id.* While that's admittedly shady, it doesn't erase Plaintiffs' signatures from the arbitration agreement. Car sales often contain a lot of boilerplate language and contractual gobbledygook. But Plaintiffs agreed to an arbitration agreement for "any Claim related to or arising out of the transaction" identified in the Buyer's Order. ECF No. 38-1 at 5. The RPA contains no language that

3

explicitly overrides that material term, though it does contain a merger clause. *See* ECF No. 43 at 7. Yet the merger clause incorporates "any documents" that were part of the transaction. *Id.* While Plaintiffs say they never agreed to the Buyer's Order, thus rendering this language inapplicable vis-à-vis the arbitration agreement, there's no express representation to add teeth to this assertion. What does have teeth is the arbitration agreement itself, which Plaintiffs signed. *See* ECF No. 38-1 at 5. And Plaintiffs do not carry their steep burden to overcome the Court's presumption in favor of enforcing that agreement. *See Webb*, 89 F.3d at 258.

*Third*, contrary to Plaintiffs' assertions, *see* ECF No. 43 at 8, Defendants did not waive their right to arbitrate this dispute. This is admittedly a Hail-Mary argument, as "[t]here is a strong presumption against waiver of arbitration." *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999) (collecting cases). Plaintiffs brief how a finding of prejudice factors into this analysis, *see* ECF No. 43 at 8, but the Court need not reach that consideration because Defendants' invocation of the legal process is insufficient to waive the right to arbitration. *See Aptim Corp. v. McCall*, 888 F.3d 129, 141 (5th Cir. 2018). In many cases, filing an initial complaint "raising a claim for damages" that does not "assert[] an arbitration clause" sufficiently waives the right. *Id.* (citing *Nicholas v. KBR, Inc.*, 565 F.3d 904, 908 (5th Cir. 2009). Here, however, Plaintiffs seek to apply these precedents against Defendants who have mainly played defense. *See* ECF No. 43 at 8. And the law is clear that a defendant waives its right to arbitrate a dispute only by litigating "a specific claim it subsequently seeks to arbitrate." *Forby v. One Techs., L.P.*, 13 F.4th 460, 465 (5th Cir. 2021) (collecting cases).

In analyzing Plaintiffs' waiver argument, the Court is mindful that such arguments are "evaluated on a case-by-case basis." *Id.* at 462. In this case, Defendants have filed an answer to Plaintiffs' Original Complaint and Amended Complaint (ECF Nos. 32, 42) and the present Motion (ECF No. 38). Far from dragging this case along, Defendants have engaged the legal process only as needed to respond to allegations against them and properly raise their right to arbitrate. Plaintiffs

4

rightly note that Defendants "did not file the Motion when this case was before Judge Starr; they did not file it before Judge O'Connor; and now, they file it before [the undersigned] only after advantageously waiting for a ruling on a dismissal motion." ECF No. 43 at 11. By stretching one fact (this case has been transferred twice) into three assertions (defendants didn't file the Motion before Judge Starr or Judge O'Connor), Plaintiffs divert attention from this case's relative youth. Indeed, the referenced transfers have all occurred since October 30, 2023. *See* ECF No. 1. Moreover, service of process was not properly effected upon all Defendants until late December. *See* ECF No. 18.

In this short timeframe, Defendants have not gone on the attack or otherwise devoted time and resources to litigating a claim they now wish to arbitrate. *See Forby*, 14 F.4th at 465. Rather, they have filed required responsive pleadings and moved to enforce a valid arbitration agreement. *See* ECF Nos. 32, 38, 42. Indeed, they filed the present Motion less than two weeks after Plaintiffs filed their Amended Complaint. *See id.* They even filed it *before* their Amended Answer. *See* ECF Nos. 38, 42. If Defendants' defensive maneuvers waived their right to arbitrate, the very act of filing a motion to compel arbitration would defeat the remedy requested. Thus, the Court finds Plaintiffs do not overcome the "strong presumption against waiver of arbitration." *Forte*, 169 F.3d at 326.

### B. The Arbitration Agreements Cover Plaintiffs' RICO Claims.

Plaintiffs next contend that, "[e]ven if valid arbitration agreements exist," the RICO claims at issue in this action "are not within the arbitration agreements' ambits." ECF No. 43 at 8. Insofar as the Court's analysis begins with the agreement's language itself, *see Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985), the Court is unaware how Plaintiffs reach this conclusion. Disch's arbitration agreement covers "any Claim related to or arising out of the transaction." ECF No. 38-1 at 5. Bergstrom's covers "[a]ny claim or dispute, whether in contract, tort, statute, or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute)." *Id.* Plaintiffs' RICO claims are

5

"any claim or dispute." And they're certainly "any claim or dispute [arising from a] statute." Thus, absent case law suggesting RICO claims are immune from the Court's strong pro-arbitration presumption, the Court is unpersuaded by this argument. That is especially true considering that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

## CONCLUSION

A party resisting arbitration has a tough field to plow. The Court must favor a signed arbitration agreement. *See Grigson*, 210 F.3d at 526. And it must resolve doubts regarding the agreement's scope *in favor of arbitration. See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25. For the reasons stated above, Plaintiffs fail to carry their burden here. They further argue that, should the Court grant Defendants' Motion, "dismissal of the action [is] more appropriate than a stay." ECF No. 43 at 14 (cleaned up). This assertion relies upon old law and is contrary to clear Supreme Court precedent. *See Smith v. Spizzirri*, ___ U.S. ___, 144 S. Ct. 1173, 1172 (2024) ("When a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration."). In other words, when 9 U.S.C. § 3 says "shall," it means it. Accordingly, the Court **GRANTS** Defendants' Motion (ECF No. 38) and **STAYS** this case pending resolution of the arbitration process.

**SO ORDERED** on this **3rd day** of **June 2024.**

_Mark T. Pittman_
MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE